## LAKE ERIE & WESTERN R. R. Co.
### v.
## JAMES D. PIKE, ADMINISTRATOR.

*Railroads—Personal Injury at Crossing—Contributory Negligence—Parent and Child—Evidence.*

1. In an action against a railroad company to recover damages for the death of a child, alleged to have been occasioned by the defective condition of a street crossing, this court holds that, notwithstanding such defects, the proximate cause of the death was the gross negligence of a person with whom the deceased was riding with his father's consent.

2. In an action of this character the negligence of the parent, or of those placed in charge of the child by the parent, may be shown in defense.

[Opinion filed January 21, 1889.]

APPEAL from the Circuit Court of McLean County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. A. E. DEMANGE and W. E. HACKEDORN, for appellant.

Where the action is not for the benefit of the person injured, but by the parent for his own benefit, as in this case, to recover

for technical loss of service under the statute, the negligence of such parent is a good defense.    Shearman and Redfield on Negligence, Sec. 71; City of Chicago v. Starr, 42 Ill. 174 ; Glassey v. Hustonville, etc., Co., 57 Pa. St. 172 ; Koons v. St. Louis, etc., R. Co., 65 Mo. 592 ; Pittsburg, etc., R. Co. v. Vining, 27 Ind. 513 ; Williams v. Texas, etc., R. Co., 60 Texas, 205 ; C. & N. W. R. R. Co. v. Schumlowski, 8 Ill. App. 613; Fitzgerald v. St. Paul, etc., R. R. Co., 29 Minn. 336.

Contributory negligence on the part of the boy or of the person in charge of him, which would constitute a defense to an action brought in his name, will preclude a recovery by the father or the administrator, for the benefit of the next of kin. Shearman & Redfield on Negligence, Sec. 71; C. & N. W. R. R. Co. v. Schumlowski, 8 Ill. App. 613; Chicago, etc., R. R. Co. v. Harney, 38 Ind. 282 ; T. W. & W. R. R. Co. v. Grable, 88 Ill. 442 ; T. W. & W. R. R. Co. v. Miller, 76 Ill. 278.

It is requisite to the liability of a railroad company that the person injured should not have been guilty of any want of ordinary care and prudence for his own safety which directly contributed to the injury; if the evidence shows such want of care, even though it also shows negligence of the railroad company, there is no cause of action unless the injury was wilfully committed.    Ill. Cent. R. R. Co. v. Green, 81 Ill. 19 ; C., B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510 ; C. & N. W. R. R. Co. v. Sweney, 52 Ill. 331.

Even though a crossing may be a dangerous one through the neglect of the railroad company (though it is the duty of the railroad company under the statute to keep its crossings in safe condition), yet, if a person is familiar with its condition, it is his duty to exercise care and caution in proportion to the magnitude of the danger, and if he fails to do so and is injured he can not recover.    R. R. I. & St. L. R. R. v. Byam, Adm'r, 80 Ill. 528.

Mr. James S. Ewing, for appellee.

Railroad companies are bound, by law, to construct and maintain crossings and approaches thereto over streets, so that

at all times they shall be safe as to persons and property. 2 Starr & C. Ill. Stat., Vol. II, Sec. 71, Chap. 114; People ex rel. v. C. & A. R. R. Co., 67 Ill. 118; R. R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235.

The following cases are in point upon all questions arising in this case. City of Chicago v. Major, 18 Ill. 349; C. & A. R. R. Co. v. Shannon, 43 Ill. 338; C. & A. R. R. Co. v. Gregory, 58 Ill. 226; Chicago v. Hesing, 83 Ill. 204; Stafford et al. v. Rubens, 115 Ill. 196; Lander v. Weick, 75 Ill. 93.

The verdict of a jury will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize a verdict, notwithstanding it may appear to be against the strength and weight of the testimony. I. C. R. R. Co. v. Gillis, 68 Ill. 317; Shevalier et al. v. Seager, 121 Ill. 568.

The question of negligence, both of the railroad company and of the other parties to this suit, was submitted to the jury under proper instructions as to the law, and they have found that the railroad company was guilty of gross negligence; that neither the driver, the deceased, nor the parents of the deceased were guilty of negligence. That verdict under the law is determined, and in Illinois is conclusive, and should be respected.

The entire question of negligence is for the jury. C. & A. R. R. Co. v. Pennell, 94 Ill. 445; Dublin, etc., Ry. Co. v. Statlery, H. L. Cas. 1175; Chicago v. Herz, 87 Ill. 542.

The Supreme Court in the case of Shevalier et al. v. Seager et al., 121 Ill. 567, says:

"In this state of the testimony, it was the peculiar province of the jury to determine which set of these witnesses was right, and which was wrong. This the jury did, and the conclusion reached by them has received the sanction and approval of the judge who presided over the trial, and in whose presence and hearing these witnesses gave their testimony. Notwithstanding this, we are asked to set aside the verdict of the jury, sanctioned as it is by the judge who heard the cause, and reverse the decree of the lower court, mainly on the ground that the verdict of the jury was not

L. E. & W. R. R. Co. v. Pike.

sustained by the weight of the evidence.    That we have no right to do.    This is abundantly settled by the authorities."

CONGER, J.    This was a suit brought by appellee, father and administrator of the estate of William D. Pike, deceased, to recover damages for his death, caused, as it is claimed, by the negligence of appellant.

Deceased was nine years old, and a boy of ordinary intelligence.    He was permitted by his father to ride for pastime upon a coal and ice wagon driven by one George Washburn, whom the father had known about three months.

At the point where Market street crossed appellant's railway, the latter had in July, 1887, constructed a crossing, in which wagons and teams had worn chuckholes, which had been filled up in February, 1888, and two or three times after June, 1888, and prior to the accident by which the boy lost his life.

On July 21, 1888, deceased rode with Washburn out to an ice house three-fourths of a mile west of the Market street crossing, where the wagon was loaded with two tons of ice. On starting back, Washburn placed deceased on the foot board of the wagon, which was a board eight to ten inches wide attached to the front end of the wagon bed, midway between its top and bottom, with its outer edge three and a half inches higher than its inner edge, and about five feet from the ground.    Washburn sat on top of the bed on the left side with his feet on this foot board, while deceased sat on the foot board at the right hand side of the wagon immediately behind the right mule, and in front of the fore wheel of the wagon, with nothing for his feet to rest upon, and enabled to keep his seat only by grasping the edge of the seat upon which he was sitting, with his hands.    In this position they passed upon the crossing.    The front wheels dropping off the plank at the side of the rails into the chuckhole, made the wagon wrench, and caused the boy to fall off immediately in front of the wheel, which instantly passed over and killed him.    Washburn, standing on the other end of the foot board, as the boy fell off, made a grab for him, but could not reach him.

There is some conflict in the evidence as to the size of these chuckholes, but Washburn describes them as follows :

" They were about six inches deep, and three or four feet across them; the crossing planks on the railroad were about the length of one plank of twelve feet; the chuckholes extended very nearly the whole length of these planks. I knew the position of these chuckholes pretty thoroughly; I could not drive across without striking the chuckholes; I told the boy to hold on; he took hold on each side of him on the front edge of the foot board; I didn't take hold of him nor put my foot in front of him, nor do anything to hold him on."

In actions of this character, brought for the benefit of the parent, the negligence of the parent or of those placed in charge of the child by the parent, is proper to show in defense. Shearman & Redfield on Neg., Sec. 71; T. W. & W. R. R. Co. v. Miller, 76 Ill. 278; T. W. & W. R. R. Co. v. Grable, 88 Ill. 441.

While appellant was guilty of negligence in suffering the crossing to be in the condition it was, still we think the negligence of Washburn so gross as to preclude a recovery. He well knew the condition of the crossing and the effect it would have upon his heavily loaded wagon, as, passing obliquely over this crossing, one of the front wheels would first sink into the hole, thereby giving the wagon such a lurch as to render it almost impossible for the little boy to hang to his dangerous seat, perilous enough even upon a level road. Had he placed him in the middle of the seat, the child might have had some chance for his life by falling between the wheels; but placed as he was, the danger of being thrown off was great, with almost absolute certainty, if he fell, of the wheel instantly passing over him.

Much as we may sympathize with appellee in his great loss, we feel compelled to hold that the verdict is so plainly against the evidence that it can not be sustained.

The judgment of the Circuit Court will be reversed.

*Judgment reversed.*

*Certificate of facts as found by the court:*

The court finds that appellant was guilty of negligence in allowing its crossing at Market street in Bloomington to be out of repair; that there were chuckholes about six inches deep and from three to four feet wide at the edge of the planks of the crossing outside of the rails of the railway.

The court further finds that deceased was a boy nine years old, and was permitted by his father, the appellee, to ride for pastime upon a coal and ice wagon driven by one George Washburn, whom the father had known but about three months; that on the 21st of July, 1888, deceased was riding on Washburn's wagon loaded with two tons of ice; that Washburn was sitting on the top of the ice at the left side of the front of the wagon with his feet on the foot board, which was a board eight or ten inches wide, attached to the front end of the wagon bed, and about five feet from the ground. Deceased sat on the right end of this foot board immediately behind the right mule of the team, and in front of the wheel of the wagon, with no support for his feet, and enabled to keep his seat only by grasping the edge of his seat with his hands. In this position they passed upon the crossing at said Market street, which crossing was oblique and not at right angles to the railroad. The front wheel dropping off the plank into the chuckhole, gave the wagon a wrench, and caused deceased to fall off immediately in front of the wagon wheel, which instantly passed over him and caused his death.

The court finds that Washburn was in charge of deceased, and that he was guilty of gross negligence in placing him or permitting him to ride upon the wagon as above set forth, and that the negligence of Washburn is legally imputable to appellee and prevents a recovery against appellant.