## THE CHICAGO CITY RAILWAY COMPANY

*v.*

## FRANK WILCOX.

*Filed at Ottawa June 15, 1891.*

1. NEGLIGENCE—*of parent, not imputed to child.* Where a child of tender years is injured by the negligence of another, the negligence of his parents, or others standing *in loco parentis,* can not be imputed to the child, so as to support the defense of contributory negligence to his suit for damages.

2. But where the action is brought by the parent, or for the parent's own benefit, the contributory negligence of such parent may be shown in bar of the action.

3. SAME—*contributory—when child incapable of—matter of law or fact.* It has been held that up to a certain age, the precise limit of which is not and can not be well defined, a child is incapable of such conduct as will constitute contributory negligence, and that the court may so hold as a matter of law. It has been held that children of eighteen months, of two years, of two years and ten months, of four years, under five years, of five years, of six years, under seven years and even seven years of age, are incapable of such negligence, and this rule seems to have been recognized in this State in several cases.

4. It has also been held that young children are bound to use such care, and such care only, as is usually exercised by children of the same age and degree of intelligence, and that it is always therefore a question of fact, to be determined by the jury, whether in a given case the child was in the exercise of proper care, his tender years, his intelligence or want of it, and all the circumstances by which he was surrounded, being taken into account. Under this rule, it is claimed it can never be laid down, as a matter of law, that a child, however young, is incapable of contributory negligence, it always being a question of fact.

5. PRACTICE IN THE SUPREME COURT—*error will not always reverse.* Where the evidence, taken in connection with a plaintiff's age, he being only six years old, fails to warrant the inference of his negligence as contributory to his injury, and the defendant is found guilty of negligence causing such injury, an instruction holding, as a matter of law, that negligence could not be imputed to the plaintiff, even if incorrect in such holding, can not do the defendant any injury, and is no ground of reversal.

6. A party has no just ground of complaint against an instruction which incorrectly assumes the plaintiff's age, at the time of receiving an injury, to be one year more than it was, when this is more favorable to the defendant.

7. If it can be seen that an instruction given, though embodying an incorrect proposition of law, could not, in view of the evidence and all inferences which may properly be drawn from it, have materially prejudiced the party complaining of it, the judgment will not on that account be reversed.

8. In an action by an infant to recover for a personal injury from negligence, the court, on behalf of the plaintiff, gave an instruction which tacitly assumed that under proper circumstances the rule of imputed negligence might apply, which accorded with the defendant's contention: *Held*, that the error was one of which the defendant could not complain.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Mr. C. M. HARDY, for the appellant:

Negligence is a question of law. *Railroad Co.* v. *Haworth,* 39 Ill. 353; *Railway Co.* v. *Pennell,* 94 id. 448.

Plaintiff shows that he exercised due care. *Peoria* v. *Simpson,* 110 Ill. 294; *Railroad Co.* v. *Andres,* 16 Bradw. 292; *Mendota* v. *Fay,* 1 id. 418; *Kepperly* v. *Ramsden,* 83 Ill. 354.

When the question of negligence is one of fact and not of law, its corollary, the question of prudence and due care, is one of fact and not of law. *Myers* v. *Railroad Co.* 113 Ill. 386; *Coppner* v. *Pennsylvania Co.* 12 Bradw. 600.

It is a question of fact, for the jury to determine from the evidence, whether a person receiving an injury from the alleged negligence of another, and who sues to recover therefor, has exercised proper care and caution on his part, and not one of law. It is not for the court to tell the jury, etc. *Pennsylvania Co.* v. *Frana,* 112 Ill. 398.

In instructions to the jury when negligence is the gist of the action, it is the duty of the court to define negligence and tell the jury what it is in law, and leave them to find the facts,

and determine whether or not they support the charge under such definition. All inferences arising from the existence of facts proved should be drawn by the jury, and not by the court. *James* v. *Johnson*, 12 Bradw. 286.

That the question whether a child has been guilty of contributory negligence or not presents an issue of fact, has been repeatedly decided by this court. *Chicago* v. *Keefe*, 114 Ill. 222; *Railroad Co.* v. *Murray*, 62 id. 326; *Railroad Co.* v. *Eininger*, 114 id. 79; *Railroad Co.* v. *Becker*, 76 id. 32.

Mr. CHARLES E. POPE, for the appellee:

The parent's contributory negligence does not cut off the child's claim for an injury. Cooley on Torts, (2d ed.) 820, note 1; Bishop on Non-Contract Law, 583, note 1; *Robinson* v. *Cone*, 22 Vt. 213; *Railway Co.* v. *Robinson*, 127 Ill. 9.

When the damages go to the parents or next of kin, the negligence of the parents will bar a recovery. *Railway Co.* v. *Grable*, 88 Ill. 441; *Chicago* v. *Hess*, 83 id. 204; *Bromley* v. *Goodwin*, 95 id. 118; *Tuttle* v. *Robinson*, 78 id. 332.

If the parents were not guilty of negligence, as the child was, too young, in the sight of the law, to be negligent, the instruction is immaterial, and the only question that can arise is the question of the negligence of the defendant. *Railroad Co.* v. *Welsh*, 118 Ill. 575.

Certainly, the child himself showed a wisdom and discretion beyond his years in waiting for the south-bound train to pass. Coming, as he did, at the rear of this train, in a north-easterly direction, it was impossible for him to see the north-bound train. Hence, looking at the boy's conduct, as he is guiltless of negligence, the instruction complained of could not have misled the jury. If the child was in the exercise of ordinary care and prudence, the negligence of the parents was immaterial. *Railway Co.* v. *Robinson*, 127 Ill. 9.

As to whether negligence of an infant is a matter of law or a question of fact, see *Railway Co.* v. *Robinson*, 127 Ill. 10; *Rail-*

road Co. v. O'Connor, 119 id. 586; Railroad Co. v. Lane, 130 id. 116; Nagle v. Railroad Co. 88 Pa. St. 35; 1 Thompson on Negligence, 181·; Railway Co. v. Grable, 88 Ill. 441; Bishop ·on Non-Contract Law, sec. 586; Railway Co v. Ryan, 131 Ill. ·474; Chicago v. Keefe; 114 id. 222; Railway Co. v. Eininger, :114 id. 79; Beach on Negligence, sec. 39, note 2; Wharton :on Negligence, sec. 309.

That negligence of parents can not be imputed to infants, :see Bishop on Non-Contract Law, secs. 581-583, 591; Whar-·ton on Negligence, secs. 310-314; 1 Shearman & Redfield on :Negligence, sec. 78; Beach on Negligence, secs. 40-45; Cooley :on Torts, (2d ed.) p. 818, and cases cited in notes to the text in these different works.

Mr. E. F. MASTERSON, also for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by Frank Wilcox, an infant, by his next friend, against the Chicago City Railway Company, to recover damages for a personal injury. The declaration alleges that, on the 24th day of June, 1887, the plaintiff was passing along Harmon court in the city of Chicago at its crossing over the defendant's railway on Wabash avenue; that the defendant, by its servants, was then and there running on said railway a train of cars drawn by cables running underneath the surface of said avenue, and that while the plaintiff, with all due care, was passing along Harmon court at said railway crossing, the defendant, by its servants, so carelessly and negligently managed and controlled said train of cars, without slackening the speed thereof or ringing a bell, that said train ran upon and struck the plaintiff with great force and violence and so bruised and injured one of his legs as to render it necessary to amputate the same, thus rendering him a cripple for life. The defendant pleaded not guilty, and on trial the jury found a verdict for the plaintiff and assessed his dam-

ages at $15,000, and for that sum and costs the plaintiff had judgment. On appeal to the Appellate Court said judgment was affirmed, and by a further appeal the record is now brought to this court for review.

The plaintiff at the time he was injured was a child only six years of age, and was living with his father and step-mother on the south side of Harmon court a few feet east of the corner of Wabash avenue. The evidence tends to show that just before the time of his injury he was on the south-west corner of Wabash avenue and Harmon court, playing with two other boys, and that his step-mother had come out of her house and was standing on the corner on the opposite side of Wabash avenue; that as she came out to the corner the plaintiff called to her and asked her if she wanted him, to which she replied: "No, you can stay there;" that an acquaintance of Mrs. Carroll's coming along, she conversed with her for a few minutes, and then turned to go back to her house, and as she did so, the plaintiff called out: "Mamma, wait, I am coming;" that she thereupon stopped and stood waiting for the plaintiff, and as she did so, she saw a train of cable-cars approaching from the north and motioned to the plaintiff to wait until it had passed, which he did; that as it passed, the plaintiff walked around the rear end of it, and was immediately struck by another train coming from the south, and received his injury.

The only material questions in the case open for consideration here, arise upon the third instruction given to the jury at the instance of the plaintiff, which was as follows:

"The court instructs the jury for the plaintiff, that if they, from the evidence, believe that the parents are working people, and that the father was not present at the time of the accident, and that the mother was attending to her usual occupation in attending their little store on Harmon court, in such event the law does not require that persons in their station of life shall keep constant watch over their children, nor can the want of such care be imputed to them as negligent conduct,

nor can negligence be imputed to the child, on account of its age, he being seven years of age, or about that at that time."

This instruction incorrectly assumes that the plaintiff, at the time of his injury, was one year older than he really was. The trial was in November, 1888, and the evidence is that he was seven years of age the preceding June, which would make him but six years of age June 24, 1887, the date of his injury. But this erroneous assumption was more favorable to the defendant than the evidence warranted, and therefore affords the defendant no just ground of complaint.

The instruction also, while holding that under the facts supposed, the negligence of the plaintiff's parents can not be imputed to him, seems to be based upon the tacit assumption that, under proper circumstances, the rule of imputed negligence might apply. This assumption, if erroneous, was not prejudicial to the defendant, as the defense is based upon the assertion of that rule, as well as the assumption that it should be applied under the facts in this case. The instruction then, so far as this portion of it is concerned, is free from any valid objection which the defendant can urge, if it can be shown, either that under the facts supposed the negligence of the plaintiff's parents can not be imputed to him, or that the doctrine of imputed negligence can have no application to a case of this character. We prefer to consider the latter of these two propositions, and the question then is, whether the negligence of the plaintiff's parents, even if such negligence is proved, can be imputed to the plaintiff so as to be available in support of the defense of contributory negligence.

Upon this question the decisions of the courts of the various States are very much in conflict. The leading case among those which hold that the negligence of a parent, custodian, or one in loco parentis, should be imputed to a child not capable of caring for his own safety, is *Hartfield* v. *Roper*, 21 Wend. 615, decided by the Supreme Court of New York in 1839. In that case the plaintiff, a child about two years old, was alone

in a travelled portion of a highway some distance from any house. The defendant was driving a sleigh, and the child was run over by the horses and injured before the defendant or any of those in the sleigh saw him. The plaintiff having recovered a verdict, a new trial was granted on the grounds, first, that the evidence failed to show negligence on the part of the defendant, and, second, that negligence on the part of the plaintiff's parents was clearly shown. The court held that although the child, by reason of his tender age, was incapable of using that ordinary care which is required of a discreet and prudent person, the want of such care on the part of his parents furnished the same answer to an action by the child as would the omission of such care by the plaintiff himself in an action by an adult. The reasoning of the court embodied in an elaborate opinion by Mr. Justice Cowen is, in substance, that the custody of the child was confided by law to its parents, that said child could not be exposed as it was in that case without gross negligence; that an adult injured by a collision could not recover if he had contributed to the injury, that the same rule was applicable to children and could be enforced only by requiring care from those who have them in custody; that an infant is not *sui juris*, but belongs to his custodian; that the custodian is his agent and the custodian's neglect is therefore his neglect. The rule thus established has been adhered to, with slight modifications, by the courts of New York, and has also been adopted by the courts of several of the other States, and is usually known as the New York Rule.

What is known as the English rule is declared in *Waite* v. *N. W. Ry. Co.* 1 El. Bl. & El. 719. In that case the plaintiff, an infant about five years old, was in charge of his grandmother, who purchased tickets for both at a station with the intention of taking the train to another point on said line of railway. In crossing the track to reach a platform, they were run down by a train under circumstances of concurrent negligence on the part of the grandmother and the servants of the

company. The grandmother was killed and the plaintiff seriously injured. The court, in holding that no recovery could be had, repudiated the idea that there was any relation between the plaintiff and his grandmother akin to that of principal and agent, but placed its decision upon the theory that he and she were identified the same as though he had been in her arms. The decision turned upon the legal identity between the infant plaintiff and his custodian, and did not go beyond that class of cases in which the parent or custodian is present and controlling the infant at the time of the injury.

In this country, in many of the States, the rule established by the case of *Hartfield* v. *Roper* has been seriously criticised and condemned. The leading case in which that rule is repudiated, and in which is established what has sometimes been called the Vermont rule, is *Robinson* v. *Cone*, 22 Vt. 213. In that case a boy, less than four years of age, was attending school in the country, and as he was returning home, he was amusing himself by riding down hill on his sled. While engaged in this sport, as he was lying upon his breast on his sled with his legs hanging over the sled, he was run upon and injured by the two-horse sleigh of the defendant who was driving down hill on a smart trot. The court in its decision repudiated the doctrine of imputed negligence, and held that, although a child of tender years may be on the highway through the fault or negligence of his parents, yet, if he be injured through the negligence of the defendant, he is not precluded from obtaining his redress, all that is required of the infant plaintiff being, that he exercise care and prudence commensurate with his capacity.

The rule denying the doctrine of imputed negligence is now recognized and enforced by the courts of many of the States, and is supported by the reasoning and authority of text-writers whose opinions are justly entitled to a high degree of consideration. Among them may be mentioned Mr. Bishop, who in his recent treatise of Non Contract Law, sec. 582, says: "This

new doctrine of imputed negligence, whereby the minor loses his suit, not only where he is negligent himself, but where his father, grandmother or mother's maid is negligent, is as flatly in conflict with the established system of the common law as anything possible to be suggested. The law never took away a child's property because his father was poor or shiftless or a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it. But, by the new doctrine, after a child has suffered damages, which, confessedly, are as much his own as an estate conferred upon him by gift, and which he is entitled to obtain out of any of the several defendants who may have contributed to them, he can not have them if his father, grandmother or mother's maid happens to be the one making the contribution. In these and other respects, it is submitted, the established principles stated in a preceding section are conclusive of the proposition that the doctrine now in contemplation does not belong to the common law." See full discussion of the question of imputed negligence in case of injuries to children in Wharton on Negligence, sec. 314, *et seq;* Beach on Contributory Negligence, secs. 38-48.

It seems to be assumed by several of the writers on the subject that this court is committed to the doctrine that in a suit by a child to recover damages caused by the negligence of the defendant, the negligence of the plaintiff's parents or custodians may be imputed to the plaintiff in support of the defense of contributory negligence. While there is in some of the cases some foundation for this assumption, yet, in our opinion, the question has never been so considered or determined by this court as to make it the settled rule in this State. Most of the cases to which reference is made as supporting said doctrine were suits brought by a parent in his own right or as the legal representative of the child, where the death of the child was alleged to have been caused by the negligence of the defendant. Such was the case in *City of Chicago* v. *Major,*

18 Ill. 349; *City of Chicago* v. *Starr*, 42 id. 174; *C. & A. R. R. Co.* v. *Becker*, 76 id. 25; Same Case, 84 id. 483; *Hund* v. *Geier*, 72 id. 593; *City of Chicago* v. *Hesing*, 83 id. 204; and *T. W. & W. Ry. Co.* v. *Grable*, 88 id. 441. Where an action for the negligent injury of an infant is brought by a parent, or for the parent's own benefit, it is very justly held that the contributory negligence of such parent may be shown in bar of the action. That is only a phase of the general rule that the contributory negligence of the plaintiff is a defense. Beach on Contrib. Neg. sec. 44.

Of the remaining cases to which we are referred, in which the doctrine of imputed negligence has been discussed, the first is, *A. B. R. R. Co.* v. *Grimes*, 13 Ill. 585. In that case suit was brought by an adult to recover damages of the railroad company for killing a mare, and the case of *Hartfield* v. *Roper* is incidentally referred to in the opinion as indicating an exception to a general rule which the court had laid down in its decision, but there is nothing indicating an approval or adoption of the rule there announced. In *C. & A. R. R. Co.* v. *Gregory*, 58 Ill. 229, suit was brought by a child not quite five years of age and the judgment in favor of the plaintiff was affirmed, the court holding that no negligence was shown either on the part of the plaintiff or his mother, and there was therefore no occasion for determining whether her negligence, if she had been negligent, would have been imputed to the plaintiff. In *City of Chester* v. *Porter*, 47 Ill. 66, suit was brought by a child about three years old to recover damages for injuries caused by his being run over by an ox-team and cart at work on the street. A judgment in favor of the plaintiff was reversed, this court holding that there was no evidence in the record of any negligence on the part of the defendant, and the fact that the plaintiff ought not to have been permitted to be on the street alone is alluded to only in the discussion of the want of evidence tending to charge the defendant with negligence. The defense of contributory negligence is not

spoken of. In *P., Ft. W. & C. R. R. Co.* v. *Bumstead*, 48 Ill. 221, a judgment in favor of the plaintiff was affirmed, the court holding, so far as the defense based upon the alleged negligence of the plaintiff's parents was concerned, that no such negligence was proved, and there was therefore no occasion to either assert or discuss the doctrine of imputed negligence. In *Gavin* v. *City of Chicago*, 97 Ill. 66, the plaintiff brought suit for an injury alleged to have been caused by the negligence of the city authorities in improperly constructing or managing a swing bridge over the Chicago River. The defendant attempted to show negligence on the part of the plaintiff's mother in permitting him to be on the street in the vicinity of said bridge unattended. A judgment in favor of the defendant was affirmed, the court holding that there was no proof of negligence either on the part of the plaintiff's mother or of the city authorities.

It is apparent that in none of the cases above mentioned was there any occasion for the court to determine whether, as a rule of law, the negligence of the plaintiff's parents or custodian would sustain the defense of contributory negligence, nor is there any attempt in any of them to consider or discuss the rule. In several of them language is used which would seem to imply a tacit recognition of the doctrine of imputed negligence, but in none of them was the adoption of that doctrine essential to the decision, nor can we suppose from the language used that the court intended to commit itself definitely to an affirmance of that doctrine.

The only remaining decision of this court on this question to which our attention has been called is that of *O. & M. R. R. Co.* v. *Stratton*, 78 Ill. 88. There the plaintiff, who at the time of his injury was ten years old, was traveling on the railroad in company with and in the immediate custody of his father. On arriving at their destination, both repaired to the platform of the car while it was yet in motion, the plaintiff taking his station on the lowest step of the platform and his

father on the next step above and behind him, both having baggage in their hands. Both stepped off while the train was still moving quite rapidly, and the plaintiff, on striking the station platform was thrown by his momentum under the cars and severely injured. This court reversed a judgment in favor of the plaintiff, not for any error of law committed at the trial, but solely on the ground that it was against the evidence. In the opinion the conclusion was reached that the evidence failed to charge the defendant with negligence, and also that it showed that the plaintiff, or at least his father, was guilty of negligence in stepping off the train while in rapid motion. Clearly, if no negligence on the part of the defendant was shown there was no right of action, and whether the plaintiff or his father was negligent was wholly immaterial. A discussion of the doctrine of imputed negligence was unnecessary to a decision of the case.

The rule, however, was stated that, if the negligence of the plaintiff's father was the proximate cause of the plaintiff's injury, the defendant could, on no just principle, be held liable. This was, no doubt, a recognition of the rule, which has been spoken of above as the English Rule, that where the parent is present and in the immediate control of the child, the parent's negligence may be imputed to the child. This court, however, can not fairly be said to be committed to a doctrine upon the principle of *stare decisis*, by its recognition or assertion in a case which does not call for its application, and the decision of which rests wholly upon other grounds.

Not being concluded therefore by any of our former decisions, we are disposed to adopt the rule which seems to us to be most reasonable and most in conformity with the recognized principles of the common law, viz., that where a child of tender years is injured by the negligence of another, the negligence of his parents or others standing *in loco parentis* can not be imputed to him so as to support the defense of contributory negligence to his suit for damages. So far then as this branch

of the case now under consideration is concerned, the instruction given contained no error as to which the defendant has any just ground of complaint.

But it is further objected that said instruction is erroneous in holding, as a matter of law, that the plaintiff, who at the time of his injury, was only six years of age, could not be charged with personal negligence which the jury could consider as tending to sustain said defense. The application of the doctrine of contributory negligence to the conduct of young children is a difficult one, and very naturally had led to a considerable difference of opinion. The two opposing views most commonly met with are, first, that up to a certain age, the precise limit of which is not and perhaps can not be well defined, a child is incapable of such conduct as will constitute contributory negligence, and that the court may so declare as a matter of law. The rule thus contended for is sometimes said to be analogous to the rule of the common law which exempts children under seven years of age from criminal responsibility. It has accordingly been held that children of eighteen months, of two years, of two years and ten months, of four years, under five years, of five years, of six years, under seven years, and even seven years of age, are incapable of such negligence. Bishop's Non Contract Law, sec. 586, and authorities cited. This rule seems to have been recognized in this State with more or less distinctness in the following cases: *C. & A. R. R. Co.* v. *Becker*, 84 Ill. 483; *C. & A. R. R. Co.* v. *Gregory*, 58 id. 226; *City of Chicago* v. *Hesing*, 83 id. 204; *Gavin* v. *City of Chicago*, 97 id. 66; *T., W. & W. Ry. Co.* v. *Grable*, 88 id. 441; *Chi. W. D. Ry. Co.* v. *Ryan*, 131 id. 474; *C., St. L. & P. R. R. Co.* v. *Welsh*, 118 id. 572.

The other view is, that young children are bound to use such care and such care only as is usually exercised by children of the same age and degree of intelligence, and that it is always therefore a question of fact to be determined by the jury whether, in a given case, the child is in the exercise of

proper care, his tender years, his intelligence or the want of it, and all the circumstances by which he was surrounded being taken into account. Under this rule, as is claimed, it can never be laid down as a matter of law, that any child, however young, is incapable of contributory negligence, it being always a question of fact for the jury. The following cases are referred to as giving some support to this rule: *C. & A. R. R. Co.* v. *Becker,* 76 Ill. 25; *C. & A. R. R. Co.* v. *Murray,* 62 id. 326; *Kerr* v. *Forgue,* 54 id. 482; *C., R. I. & P. Ry. Co.* v. *Eininger,* 114 id. 79.

But as we are disposed to view the present case, it will be unnecessary for us to determine which of these two rules should be adopted, for even admitting that the rule last mentioned is the true one, we are of the opinion that there was no prejudicial error in said instruction. While we are not permitted to consider the evidence for the purpose of determining what is or is not proved, all questions of that character being conclusively settled by the judgment of the Appellate Court, we may properly consider the evidence, and all inferences which may legitimately be drawn from it, for the purpose of determining the propriety of the rulings of the court in giving or in refusing instructions to the jury. If then it can be seen that an instruction given, though embodying an incorrect proposition of law, could not, in view of the evidence and of all inferences which may properly be drawn from it, have materially prejudiced the party complaining of it, the judgment will not on that account be reversed.

We are of the opinion that the evidence, when considered in connection with the fact that the plaintiff, at the time he was injured, was but six years old, does not warrant the inference that he was guilty of contributory negligence. His attention, just before he was injured, was attracted to the train of cable cars approaching from the north, and in obedience to his mother's direction, he waited until it had passed by, and he then attempted to cross the track in the rear of that train.

He failed to notice another train coming from the opposite direction on the other track, and which at the time must have been on the other side of the train at which he was looking and in all probability hidden from his view. The two tracks are near together, and the instant the plaintiff passed the track on which the train was running south, he was struck by the train running in the opposite direction on the other track and injured.

The only negligence charged was in not seeing and thereby avoiding the train running north. There is no pretense that the plaintiff saw that train or that it was in any way brought to his attention before it struck him. If he had been an adult and capable of the observation, reason and reflection of a man of mature years, it would probably have been his duty to know and remember that a train might possibly be in motion on the other track, and to take such precautions as were reasonably necessary to assure himself that such was not the case before attempting to cross it. But to expect such a course of reasoning and reflection of a child but six years old would be contrary to ordinary human experience. Doubtless a child as young as the plaintiff was may possess to a very considerable degree what may be termed the instinct of self-preservation, and be in consequence capable of exercising very considerable care for his own safety. But when moved by that instinct he acts only in view of what he sees or what is actually present to his senses. To guard against an unseen danger, or one which has not come within the sphere of his observation, requires an exercise of reason and reflection of which so young a child is seldom capable, and for which the law, administered on humane principles, will scarcely hold him responsible.

The only theory, in view of the evidence, upon which the jury could have found the plaintiff guilty of negligence in attempting to pass in the rear of the train going south was, that it was his duty to observe that there was still another track to cross, and to reflect that there might be another train approaching on that track, and being warned of possible danger

by such course of reasoning, to have then looked to see whether such other track was clear before attempting to cross it. Such course of conduct may well have befitted an adult, but is scarcely to be expected of a child six years old.

We are of the opinion that, if upon the evidence, the jury had found specially that the plaintiff was guilty of contributory negligence, such finding could not have been sustained. Whether the instruction then was or was not correct in holding that, on account of the plaintiff's tender age, negligence could not be attributed to him, it manifestly did no harm, as the jury could not have found otherwise than they did on that question if the instruction had not been given, or if the contributory negligence of the plaintiff had been submitted to them as a question of fact.

We find no material error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILKIN, dissenting.